IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS OSTIC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1804-N |
| | § | |
| UNITED REGIONAL HEALTH | § | |
| CARE SYSTEM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses motions to dismiss by Defendants United Regional Health Care System ("United") [13] and Scheila Farnsworth Watson [19]. Because Plaintiffs have not pled facts sufficient to state a claim, the Court grants the motions and grants Plaintiffs leave to amend.[1]

### I. ORIGINS OF THE MOTIONS

This case arises from a dispute over the custody and control of the remains of Lisa Marie Montoya. Lisa passed away on July 17, 2022 while in the care of United Regional Hospital in Wichita Falls, Texas. Compl. ¶ 12 [1]. Lisa previously executed a medical power of attorney granting her maternal aunt, Patricia Reishus, authority to make any and all healthcare decisions on Lisa's behalf in the event of her incapacitation. *Id.* ¶ 16. Plaintiffs Dennis and Janet Ostic, Lisa's biological father and stepmother, allege that on July 19, 2022, they discovered that United Regional Hospital had sent Lisa's remains to

---

[1] Further, the Court denies Defendants' joint motion to strike the surreply [29] as moot.

MEMORANDUM OPINION AND ORDER – PAGE 1

the University of North Texas Health Science Center ("UNTHSC") as part of the "willed body program" to help educate future health professionals. *Id.* ¶ 24. The Ostics called UNTHSC to determine who had authorized the donation and were informed that Watson, Lisa's mother-in-law from her first marriage,[2] had signed the relevant paperwork. *Id.* ¶ 28.

The Ostics assert that as Lisa's biological father and stepmother, they retained higher authority than Watson to make medical decisions under Texas Health and Safety Code Section 692A.009(a). Furthermore, the Ostics contend that other individuals who may have had greater authority than them under the statute still would not have authorized the donation. *Id.* ¶ 29. The Ostics filed this suit against United and Watson alleging negligence and negligent undertaking against United, and fraud against Watson. United and Watson now move to dismiss the Ostics' claims under Federal Rule of Civil Procedure 12(b)(6).

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A viable complaint must include "enough facts to state a claim to relief that is plausible on

---

[2] Lisa was separated from her second husband, Joseph Montoya, though still married, at the time of her death. Compl. ¶ 14.

MEMORANDUM OPINION AND ORDER – PAGE 2

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).

### III.  THE COURT GRANTS THE MOTION TO DISMISS

#### A.  *The Ostics Have Not Sufficiently Pleaded Fraud Against Watson Under Rule 9(b)*

Federal Rule of Civil Procedure 9(b) requires complaints alleging fraud or mistake to state claims with particularity, or set forth "the 'who, what, when, where, and how' of the events constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)) (internal quotations omitted).  Plaintiffs must allege with particularity the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel–Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).

MEMORANDUM OPINION AND ORDER – PAGE 3

The Ostics' fraud claim against Watson does not satisfy Rule 9(b)'s pleading standard. The complaint states generically that Watson "made the false material representation . . . that she had custody and control" over Lisa's remains. Compl. ¶ 59. This allegation does not sufficiently explain the contents of what Watson communicated to advance the fraud or how the Ostics detrimentally relied on the false statements. Furthermore, the complaint does not allege when the communication from Watson to United and UNTHSC took place. Lastly, Watson communicated the fraudulent statements to United, not the Ostics, and they cannot sue Watson for allegedly defrauding United. Accordingly, the Ostics have not pleaded the necessary how and when of Watson's representations, and the Court dismisses the Ostics' fraud claim against Watson.[3]

### B. Mr. Ostic Has Not Pleaded the Unavailability of Higher Priority Individuals

The Texas Health and Safety Code sets out guidelines for the disposition of remains and their subsequent use as anatomical gifts. TEX. HEALTH & SAFETY CODE § 711.002(a); § 692A.009(a). Mr. Ostic falls into the fourth priority category as a surviving parent. *See* TEX. HEALTH & SAFETY CODE § 711.002(a); *see also id*. § 692A.009(a). Therefore, Mr. Ostic could only claim quasi-property rights to Lisa's remains if there were no higher priority individuals "reasonably available to make or to object to the making of an anatomical gift." *Id*. § 692A.009(c); *see also id*. § 711.002(a). The complaint names three higher priority individuals: Reishus, Lisa's designated medical power of attorney, Kenneth Walker, Lisa's current partner and the alternate medical power of attorney, and Joseph

---

[3] The Court declines to consider the Ostics' arguments related to intentional infliction of emotional distress, as the claim was not pleaded in the complaint.

MEMORANDUM OPINION AND ORDER – PAGE 4

Montoya, Lisa's surviving spouse. Compl. ¶ 14, 16, Ex. A ¶ 9 [1-1]. Although the Ostics allege that both Reishus and Joseph would not, and did not, allow the anatomical gift, *id*. ¶ 55, they do not plead that these three individuals were not reasonably available to make or object to the gift.[4] As pleaded, Mr. Ostic lacked quasi-property rights to Lisa's remains, and therefore United owed him no duty. Accordingly, the Court dismisses Mr. Ostic's claims.[5]

### C. Mrs. Ostic's Claims Fail

As a predicate to their negligence and fraud claims against United and Watson, the Ostics plead that Mr. Ostic had the highest statutory priority to make decisions related to Lisa's remains. As a surviving parent, he fell into the fourth priority category. *See* TEX. HEALTH & SAFETY CODE § 711.002(a); *see also id*. § 692A.009(a). Mrs. Ostic, Lisa's stepmother, falls into the eighth category: "an adult who exhibited special care and concern for the decedent." TEX. HEALTH & SAFETY CODE § 692A.009(a). Because the Ostics have pleaded facts demonstrating both Mr. Ostic's priority above Mrs. Ostic and his reasonable availability at the time of Lisa's death, Mrs. Ostic lacked the statutory authority to make decisions regarding Lisa's remains. Accordingly, Defendants would not owe a duty to Mrs. Ostic, and the Court dismisses her claims.

---

[4] Although the Ostics state in their surreply that Joseph was incarcerated, Pls.' Surreply Opp. Mot. Dismiss 5 [28], the Court cannot consider this allegation as it was not pleaded in the complaint.

[5] This negates Mr. Ostic's claims for both negligence and negligent undertaking.

MEMORANDUM OPINION AND ORDER – PAGE 5

## CONCLUSION

Because the Ostics have not pled facts sufficient to state a claim under Rule 12(b)(6), the Court grants the motions to dismiss. The Court also grants the Ostics leave to amend their pleadings within thirty (30) days of this Order. If the Ostics do not amend their claims within that time, the Court will dismiss their claims with prejudice without further notice.

Signed February 15, 2023.

_____
David C. Godbey
Chief United States District Judge