IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DENNIS OSTIC, *et al.*, § § Plaintiffs, § § v. § Civil Action No. 3:22-CV-1804-N § UNITED REGIONAL HEALTH § CARE SYSTEM, *et al.*, § § Defendants. § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses motions to dismiss Plaintiff's first amended complaint by Defendants United Regional Health Care System ("United") [36] and Scheila Farnsworth Watson [35]. Because Plaintiffs still have not pled facts sufficient to state a claim, the Court grants the motions.

## I. ORIGINS OF THE MOTIONS

This case arises from a dispute over the custody and control of the remains of Lisa Marie Montoya. Lisa passed away on July 17, 2022 while in the care of United Regional Hospital in Wichita Falls, Texas. Am. Compl. ¶ 10 [34]. Lisa previously executed a medical power of attorney granting her maternal aunt, Patricia Reishus, authority to make any and all healthcare decisions on Lisa's behalf in the event of her incapacitation. *Id.* ¶ 14. Plaintiffs Dennis and Janet Ostic, Lisa's biological father and stepmother, allege that on July 19, 2022, they discovered that United Regional Hospital had sent Lisa's remains to the University of North Texas Health Science Center ("UNTHSC") as part of the "willed

body program" to help educate future health professionals. *Id.* ¶ 22. The Ostics called UNTHSC to determine who had authorized the donation and were informed that Watson, Lisa's mother-in-law from her first marriage,[1] had signed the relevant paperwork. *Id.* ¶ 26.

The Ostics assert that as Lisa's biological father and stepmother, they retained higher authority than Watson to make medical decisions under Texas Health and Safety Code Section 692A.009(a). Furthermore, the Ostics contend that other individuals who may have had greater authority than them under the statute still would not have authorized the donation. *Id.* ¶¶ 27–29. The Ostics filed this suit against United and Watson alleging negligence, negligent undertaking, and fraud. The Court previously dismissed the Ostics' claims but granted leave to amend. Order Granting Mot. Dismiss 6 [33]. The Ostics amended their complaint to allege claims of negligence and intentional infliction of emotional distress. United and Watson again move to dismiss the Ostics' claims under Federal Rule of Civil Procedure 12(b)(6).

## II. Rule 12(b)(6) Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A

---

[1] Lisa was separated from her second husband, Joseph Montoya, though still married, at the time of her death. Am. Compl. ¶ 12.

MEMORANDUM OPINION AND ORDER – PAGE 2

viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III.  THE COURT GRANTS THE MOTION TO DISMISS

#### *A.  Mr. Ostic Has Not Plead the Unavailability of Higher Priority Individuals*

The Texas Health and Safety Code sets out guidelines for the disposition of remains and their subsequent use as anatomical gifts. TEX. HEALTH & SAFETY CODE § 711.002(a); § 692A.009(a). Mr. Ostic falls into the fourth priority category as a surviving parent. *See* TEX. HEALTH & SAFETY CODE § 711.002(a); *see also id*. § 692A.009(a). Therefore, Mr. Ostic could only claim quasi-property rights to Lisa's remains if there were no higher priority individuals "reasonably available to make or to object to the making of an anatomical gift." *Id.* § 692A.009(c); *see also id*. § 711.002(a). The amended complaint names three higher priority individuals: Reishus, Lisa's designated medical power of

MEMORANDUM OPINION AND ORDER – PAGE 3

attorney; Kenneth Walker, Lisa's current partner and the alternate medical power of attorney; and Joseph Montoya, Lisa's surviving spouse. Am. Compl. ¶ 12, 14, Ex. A ¶ 9 [34-1].  Although the Ostics allege that Reishus would not, and did not, allow the anatomical gift, *id*. ¶ 27–29, they fail to plead that all three higher priority individuals were not reasonably available to make or object to the gift.  The Ostics' argument that these individuals were unavailable because they were not notified by United or Watson is unpersuasive.  The statute does not tie reasonable availability to the actual efforts taken to notify the individuals.  Rather, the procurement organization must be able to contact the individual "without undue effort" and the individual must be "willing and able to act in a timely manner." TEX. HEALTH & SAFETY CODE § 692A.002(26).  Nothing in the amended complaint demonstrates that United or UNTHSC could not contact Reishus, or that Reishus would not have responded in a timely manner.  As pleaded, Mr. Ostic lacked quasi-property rights to Lisa's remains, and therefore United and Watson owed him no duty.  Accordingly, the Court dismisses Mr. Ostic's negligence claims.

### B. Mr. Ostic Has Not Shown That Defendants' Conduct Caused the Emotional Distress

To plead intentional infliction of emotional distress under Texas law, Mr. Ostic must show that: (1) the Defendants acted intentionally or recklessly; (2) the Defendants' conduct was extreme and outrageous; (3) the Defendants' actions caused Mr. Ostic emotional distress; and (4) the emotional distress was severe. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Mr. Ostic has not plead a causal link between United and Watson's actions and his emotional distress. As discussed in Section II.A, Mr. Ostic did not have quasi-property rights to Lisa's remains because he was not the highest priority individual under the statute. There were three higher priority individuals: Reishus, Walker, and Joseph Montoya. Although Mr. Ostic has plead facts to show that Reishus would not have approved of the donation, Am. Compl. ¶ 29, he has not shown that Walker or Joseph Montoya would have stopped the transfer of Lisa's remains for medical research purposes. Furthermore, Mr. Ostic has attributed the severe mental distress he has suffered to an "inability to hold proper funeral rights with Lisa's remains." *Id*. at ¶ 46. But he has not shown that the higher priority individuals would have allowed him to hold proper funeral rites — severing the causal link between the damages he has suffered and Defendants' actions. As such, the Court dismisses Mr. Ostic's intentional infliction of emotional distress claims.

## CONCLUSION

Because the Ostics have not pled facts sufficient to state a claim under Rule 12(b)(6), the Court grants the motions to dismiss.

Signed June 5, 2023.

David C. Godbey
Chief United States District Judge